EDMUND D. HALSEY, executor &c.,

v.

MARIANNE PATERSON et al.

A testator gave all his books, furniture, plate &c. (not including moneys or evidences of indebtedness), at his residence, to his wife absolutely; and, after giving two annuities, he also gave her the use and income of all his remaining estate for life. The wife survived him only eight days. She executed her will three days before her death. After certain specific bequests, she gave, by the fourth clause, all the rest and residue, of whatever kind or nature, *which she owned or was possessed of prior to the death of her husband*, to four persons, to be equally divided among them. She next gave all the property and estate which might have been devised or bequeathed to her by the will of her late husband, "to his legal representatives." In addition to other property which she owned before her husband's death, she held two policies of insurance on his life, payable to her or her assigns, in case she survived him. The company paid the amount of them to her executor.—*Held*, that it passed by the fourth clause of her will; *held*, also, that by the gift to her husband's "legal representatives," she intended a gift to his executors; and, further, that this gift, being specific, is not liable to contribute to testatrix's debts, until after the exhaustion of the personal property not specifically bequeathed.

Bill for construction of will.    On bill and stipulation.

*Mr. E. D. Halsey*, complainant, *in pro. pers.*

*Mr. H. C. Pitney* and *Mr. McFadden*, of Philadelphia, for legatees of Annie McFarlan.

*Mr. J. H. Stewart* and *Mr. R. S. Woodruff*, for next of kin of Annie McFarlan.

THE CHANCELLOR.

Henry McFarlan, late of Dover, in this state, died March 27th, 1882, testate. By his will he gave to his wife all the books, furniture, silver and plated ware, horses and carriages, and all other goods and chattels (not including money or the evi-

dences of indebtedness), at his residence in Dover, for her sole use and disposal; and after giving annuities to his two sisters, he gave her the use and income of all his estate, real and personal, for life. Mrs. McFarlan survived her husband, but only for a few days. She died April 5th, 1882, also testate. By her will, made three days before her death, she first directed that all her just debts and funeral expenses be paid as soon after her decease as possible. She then, by the second section, gave to Mrs. Clara Morton a diamond ring, and to Mrs. Ogilby an ermine cloak. By the third she gave the rest of her diamonds and jewelry to Henrietta C. and Helen Brinkerhoff and Katrina C. Paterson. By the fourth she gave " all the rest and residue of whatever kind or nature of her estate, which she owned or was possessed of prior to the death of her husband, to Eleanor Barrington, Charles Barrington, Emily Andrews and Annie Scott, to be equally divided between them." By the next section she gave " all the property and estate which might have been devised or bequeathed to her by the will of her late husband, to his legal representatives." The main subject of controversy is as to the disposition to be made of $10,151.51, received by the complainant, as her executor, from the Mutual Benefit Life Insurance Company, upon two policies, one for $3,000 and the other for $7,000, issued to her by that company, one July 13th, 1852, and the other October 9th, 1855, on the life of her husband. The policies were payable to her or her assigns within ninety days after due notice and proof of the death of her husband, if she should survive him, but if not, then to the children of Mr. and Mrs. McFarlan, or if under age, to their guardian, within ninety days after such notice and proof, deducting therefrom all indebtedness of the party to the company. The contestants are the executors of the husband, his next of kin, the legatees under the fourth clause of the wife's will, and her next of kin. Her property appears to have consisted of the following items: Furniture received from her husband under his will, $2,332.15; cloak, jewelry &c., $2,006; insurance money (in dispute in this controversy), $10,151.51, and the rest of her property, which she owned before her husband's death, $18,409.94. The policies

were contracts between her and the insurance company for the payment to her on conditions, all of which were observed and fulfilled, of certain sums of moneys on the event of her husband's death. Having survived her husband the money was payable to her, and it has been paid accordingly to her executor, in whose hands it now is. No question as to the validity of the contract, therefore, can enter into the consideration of the subject. The company has recognized its validity, and paid over the money to her legal representative. Nor can there be any doubt that she was entitled to receive it to her own use. *De Ronge* v. *Elliott, 8 C. E. Gr. 486*. It constitutes no part of her husband's estate. The principal question is, Who is entitled to it as part of her estate? whether it passes under the fourth clause of her will, by which she gives to the person named therein "all the rest and residue, of whatever kind or nature, of her estate, which she owned or was possessed of prior to the death of her husband."

It is contended, on the part of her next of kin, that inasmuch as she was not entitled to the money until after the death of her husband, on which event alone it was payable, she cannot be said to have owned, or to have been possessed of it before his death, and inasmuch, also, as the claim for it was a contingent one merely until her husband's death, it did not pass under the gift of property owned by her or of which she was possessed prior to his death. The question is one of intention. The testatrix evidently did not mean to die intestate as to the money in dispute, or any other of her property, but intended to dispose of all she had, or to which she was entitled in any way. She had property which had not been given to her by her husband's will, and property which he had given to her by that instrument (he died but six days before she made her will), and she intended to give the latter to his relatives, and to dispose of all the other. She draws the distinction between the two, when, in the fourth section, she gives all the rest and residue of the property which she owned, or of which she was possessed before he died, and in the next gives to his legal representatives all he had given to her by his will. By these two sections she evidently meant to dispose of all her property, "of whatever kind or nature," which re-

mained after the specific bequests in the second and third sections.
She did not, in using the language of the fourth section, contem-
plate a discrimination against the property in question, but
merely intended to draw a general distinction between the prop-
erty given to her by her husband's will and her other property.
Under the fourth clause the insurance-money passes to the lega-
tees therein named. In *Deginther's Appeal, 83 Pa. St. 337*, it
was held that the proceeds of a policy of insurance, issued to and
held by a married woman, on the life of her husband, who sur-
vived her, constituted part of her estate. It is enough in this
case, however, to say that by the language she has used, the tes-
tatrix manifestly intended to pass, by the fourth section, all her
property, of whatever description, including the policies and the
money due on them, except what she had previously disposed of,
and that which she was about to dispose of in the next section.

The bequest in the fifth. section, by its terms, is to the "legal
representatives" of the testatrix's husband, and the question is
submitted whether she did not mean by the words just quoted her
husband's. next of kin. It is settled that if an inference can be
drawn from a will that the testator used the words "personal and
legal representatives" to designate individuals answering the
description, though not in the strict legal sense of the terms, those
persons will be entitled in preference to executors or administra-
tors. *1 Rop. on Leg. 128*. It is also a rule that a bequest of
personal estate to the "representatives" or "legal" or "per-
sonal" or "legal personal representatives" of any one, means,
*prima facie*, executors or administrators. *Hawk. on Wills 107*.
In the case under consideration there is nothing beyond the
words themselves to indicate intention. It is true that the testa-
trix herself was one of the legal representatives, in the strict sense
of the term, of her husband. She was one of his executors. But
that fact of itself is not enough to show that she intended that the
property should be disposed of in a different way from that in
which, under his will, his other property would be disposed of.
The gift was to take effect at once, and the words are not substi-
tutionary. In the case of *Bridge* v. *Abbot, 3 Bro. C. C. 224*,
and *Brokaw* v. *Hudson, 12 C. E. Gr. 135*, cited by complain-

ants on this point, the words are substitutionary. The testatrix appears to have merely intended to return the property to her husband's estate. His executor will take it on the same trust on which, as executor, he holds the rest of his estate. *Long* v. *Watkinson, 17 Beav. 471; 2 Redf. on Wills 409.*

The question whether the property mentioned in the fifth section should bear its proportion of the debts of the testatrix's estate, was also submitted for decision. That gift is, in effect, a specific legacy—a legacy of specified articles. In the correct and natural order of the sections, it would have preceded the fourth clause. Personal property, not specifically bequeathed, must be applied to the payment of debts before specific legacies. *Whitehead* v. *Gibbons, 2 Stock. 230; Johnson* v. *Poulson, 5 Stew. Eq. 390.*